O

JS-6

cc: order, docket, remand letter to
Los Angeles Superior Court, No. BC 79093

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for INDYMAC BANK, F.S.B., successor-in-interest to INDYMAC INC.,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MIRWAIS AZADZOY, an individual; MIRWAIS AZADZOY, d.b.a. INVESTORS REALTY & MORTGAGE; INVESTORS REALTY & MORTGAGE, a California entity, form unknown; ZARMINA AZADZOY, an individual; WASIL A. GUDUS, an individual,<br><br>　　　　Defendants.<br>_____ | Case No. CV 09-03194 DDP (PLAx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING MOTION FOR ATTORNEYS' FEES**<br><br>[Motion filed on June 1, 2009] |

　　This matter comes before the Court on Defendant Mirwais Azadzoy's Motion to Remand this action to state court. The relevant facts underlying this motion are undisputed. The sole question raised by the remand motion is whether Plaintiff FDIC as Receiver for Indymac Federal Bank, F.S.B. timely removed this action to federal court. After reviewing the materials submitted

by the parties and considering the arguments therein, the Court grants the motion. The Court denies Azadzoy's request for attorneys' fees.

**I.      BACKGROUND**

    IndyMac Bank, F.S.B. filed this action in state court on October 15, 2007 against Mirwais Azadzoy, an individual and dba Investors Realty & Mortgage, and others. Azadzoy is a mortgage broker licensed by the California Department of Real Estate. The Complaint alleges that, in exchange for money, Azadzoy allowed branch offices of Investors Realty to open and operate his broker's license. The Complaint further charges that Azadzoy's agents in the Pleasanton, California submitted fraudulent loans. Against Azadzoy, the Complaint alleges breach of contract, specific performance, and negligence arising out of the mortgage fraud.

    On July 11, 2008, IndyMac Bank, F.S.B. was closed by the Office of Thrift Supervision ("OTS"). In conjunction with closing IndyMac Bank, F.S.B., OTS approved the reorganization of a newly chartered FDIC-insured institution, IndyMac Federal Bank, F.S.B. Pursuant to 12 U.S.C. § 1821(d)(2)(B), the FDIC was appointed as Conservator for IndyMac Federal Bank. On August 22, 2008, the FDIC as Conservator was substituted in for Plaintiff IndyMac Bank in the State Court Action.

    On March 19, 2009, OTS replaced the FDIC as Conservator with the FDIC as Receiver for IndyMac Federal Bank as a result of reported undercapitalization. On April 21, 2009, the FDIC as Conservator filed an *ex parte* application to substitute in the FDIC as Receiver for IndyMac Federal Bank. Azadzoy neither opposed nor appeared at the hearing on the motion. The state court granted the

application, which ordered that the FDIC as Receiver be substituted in as Plaintiff.  On May 6, 2009, Plaintiff filed a Notice of Removal.

At the time of Plaintiff's May 6, 2009 removal, the state court action was at an advanced stage.  Plaintiff FDIC had filed a Motion for Summary Judgment on February 2, 2009, which the state court denied in its entirety on April 15, 2009.  On April 21, 2009, Plaintiff filed both its Motion in Limine No. 1 and its *ex parte* application to substitute FDIC as Receiver.  When the FDIC removed on May 6, trial was 12 days away.

**II.  DISCUSSION**

Pursuant to 28 U.S.C. § 1447(c), Azadzoy moves to remand and for attorneys' fees.

**A.  Timeliness of Removal**

Within 30 days of the filing of the Notice of Removal, a party may move to remand "on the basis of any defect other than lack of subject matter jurisdiction," which may be challenged at any time. Azadzoy does not argue that the Court does not have subject matter jurisdiction: because FDIC is now a party to this lawsuit, the action is "deemed to arise under the laws of the United States," over which this Court has jurisdiction.  12 U.S.C. § 1819(b)(2)(A) ("[A]ll suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States."); 28 U.S.C. §§ 1331, 1441(b).

Although FDIC's presence as a party in any capacity is a basis for removal to this Court, the FDIC's right to remove is time-

3

limited.  Title 12, section 1819(b)(2)(B) of the United States Code provides:

> **(B) Removal.**  Except as provided in subparagraph (D),[1] the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party.

12 U.S.C. § 1819(b)(2)(B).  The parties dispute whether, under § 1819(b)(2)(B), the substitution of FDIC as Receiver for the FDIC as Conservator triggered a second 90-day window.

In <u>Bullion Services, Inc. v. Valley State Bank</u>, 50 F.3d 705 (9th Cir. 1995), the Ninth Circuit held that, under § 1819(b)(2)(B), separate removal periods run for the FDIC in its corporate capacity as administrator of deposit insurance and the

---

[1]Subparagraph (D) does not apply.  That section provides:
> **(D) State actions.**  Except as provided in subparagraph (E), any action--
>
>> (i) to which the Corporation, in the Corporation's capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;
>>
>> (ii) which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and
>>
>> (iii) in which only the interpretation of the law of such State is necessary,
>
> shall not be deemed to arise under the laws of the United States.

FDIC in its capacity as receiver for insolvent banks.  The <u>Bullion</u> plaintiff had filed suit in state court against the FDIC as Receiver for Valley State Bank in September 1990.  50 F.3d at 706.  After a jury trial and verdict in favor of the plaintiff, the plaintiff filed a post-verdict motion captioned Motion to Amend the Complaint to Conform to Proof, which asked the court for permission to add FDIC Corporate to its complaint.  <u>Id.</u>  The court granted this motion on February 11, 1993, and FDIC Corporate subsequently removed the action to federal court.  <u>Id.</u>  The Ninth Circuit framed the legal argument before it as whether § 1819(b)(2)(B) applies to the FDIC as a "single entity" or whether § 1819(b)(2)(B) allows either FDIC Corporate or FDIC Receiver to remove a case when either entity is the subject of a suit or is made a party.  <u>Id.</u> at 708.

The Ninth Circuit held that § 1819(b)(2)(B) provides separate removal options for FDIC Corporate and FDIC Receiver.  The court recognized that the statutory provision was unclear and, as a result, the court would construe the provision in light of its purpose.  The court noted that § 1819(b)(2)(B) "consistently has been construed as an attempt by Congress to expand, rather than restrict, the FDIC's ability to litigate in a federal forum."  <u>Id.</u>  The court then discussed the differences between FDIC Corporate and FDIC Receiver.  To achieve the goal of restoring confidence in the nation's banking system in the 1930s, Congress "created two distinct entities with two entirely different purposes": while FDIC Corporate's primary responsibility is to insure bank deposits, FDIC Receiver acts as a receiver for failed banks.  <u>Id.</u>  Consistent with the distinct functions of the two entities and the fact that they "protect different interests," "courts have been careful to keep

the rights and liabilities of these two entities legally separate." Id. at 709. The court recognized that "depending on the interests implicated by a bank failure, FDIC Corporate and FDIC Receiver may pursue different legal strategies to effectuate their respective statutory goals." Id. The court therefore concluded that each had a separate removal right. The court noted that its holding was supported by the language of 12 U.S.C. § 1821(d)(13)(B),[2] which "implicitly embraces the notion that there may be situations when either FDIC Corporate or FDIC Receiver . . . will act . . . independently." Id. The Bullion court recognized that it was departing from the Fifth Circuit's approach in Dalton v. FDIC, 987 F.3d 1216 (5th Cir. 1993), which concluded that the FDIC had one ninety-day period for removal. Bullion, 50 F.3d at 709; see also Schwarzer, Tashima, & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial ¶ 2:846n. Although the court found the facts of the Bullion case to be "radically different" from Dalton and the Fifth Circuit's concern about tactical games by the plaintiff FDIC to be compelling, the court still concluded that "in seeking to deter manipulation the court in Dalton gave insufficient weight to the intent of Congress as embodied in the purposes of the FDIC's enabling statute." Bullion, 50 F.3d at 709.

    The parties dispute whether Bullion applies here. In light of Bullion, the critical question is whether the distinction between FDIC Corporate and FDIC Receiver is meaningfully different than the

---

[2] That paragraph provides, in relevant part: "In the event of any appealable judgment, the Corporation as conservator or receiver shall . . . have all the rights and remedies available to . . . the Corporation in its corporate capacity, including removal to Federal court." 12 U.S.C. § 1821(d)(13)(B).

6

distinction between FDIC in its capacity as Receiver and FDIC in its capacity as Conservator.  FDIC argues that <u>Bullion</u>'s analysis applies to how FDIC should be treated when it acts in different *capacities* and that the FDIC acts in different capacities when it is appointed as a conservator and as a receiver.  The FDIC highlights the different rights, powers, and functions of its conservator and receiver capacities: as a conservator, FIDC argues, it was "taking such actions as necessary to put the insured depository institution in a sound and solvent condition, and to carry on the business of the institution and preserve the assets and property of the institution," Opp'n at 6; as receiver, its function is to "handle the liquidation and claims of a closed institution," <u>id.</u> at 6.  Neither party has cited a case that decides this question – whether the distinction between the FDIC Corporate and FDIC Receiver is akin to the distinction between FDIC Receiver and FDIC Conservator such that separate removal periods should accrue – and the Court has not independently found one.[3]

The statutory context for FDIC removal and FDIC roles and powers point both for and against applying <u>Bullion</u> to distinguish the FDIC's role as receiver from its role as conservator, and

---

[3] Plaintiff primarily relies on <u>Bullion</u>.  Defendant's cited cases do not resolve this issue.  <u>Buczkowski v. FDIC</u>, 415 F.3d 594 (7th Cir. 2005), addresses when the removal clock begins to run for an FDIC-party: upon the FDIC's appointment or upon the FDIC's substitution, <u>id.</u> at 596.  Additionally, the FDIC's role as plaintiff, as opposed to defendant, does not provide a compelling reason to depart from <u>Bullion</u> and go with the approach of the Fifth Circuit in <u>Dalton</u>, where FDIC was the plaintiff.  Although the <u>Bullion</u> court recognized the factual differences between the two cases, the Ninth Circuit expressly stated that it disagreed with the <u>Dalton</u> court's approach because "in seeking to deter manipulation the court in <u>Dalton</u> gave insufficient weight to the intent of Congress as embodied in the purposes of the FDIC's enabling statute."  50 F.3d at 709.

7

therefore point both for and against recognizing a separate removal period for each.  Pointing in favor of treating the two capacities separately are the <u>Bullion</u> court's emphasis on interpreting FDIC removal broadly and the fact that there are some differences between the functions and powers of the FDIC when it acts as receiver and conservator.  First, the <u>Bullion</u> court emphasized that "the grant of subject matter jurisdiction contained in FDIC's removal statute evidences Congress' desire that cases involving FDIC should generally be heard and decided by the federal courts." <u>Bullion</u>, 50F.3d at 707 (quoting <u>Kirbride v. Continental Cas. Co.</u>, 933 F.2d 729, 731-32 (9th Cir. 1991)).  This backdrop could be read to favor more opportunities for removal rather than fewer.

Second, relevant FDIC statutes recognize differences in the roles of conservators and receivers.  For example, various portions of § 1821(c) identify conservator and receiver as separate appointments.  See 12 U.S.C. § 1821(c)(2), (6), (8).  Additionally, the subsection that describes the FDIC's powers as a conservator or receiver identifies certain powers that receivers have that conservators do not: as receiver, the FDIC may take actions consistent with paragraph (D); it may "place the insured depository institution in liquidation and proceed to realize upon the assets of the institution, having due regard to the conditions of credit in the locality," <u>id.</u> § 1821(d)(2)(E) ("Additional powers as receiver"); it "may . . . organize a new depository institution . . . . or bridge depository institution," <u>id.</u> § 1821(d)(2)(F); and it may "determine claims," <u>id.</u> § 1821(d)(3).  And the Court did find one case that, in a footnote, described the FDIC as having different "capacities" and separately listed FDIC-Conservator and

FDIC-Receiver (though that case did not address those capacities in the context of removal).  See FDIC v. Niblo, 821 F. Supp. 441, 449 n.11 (N.D. Tex. 1993).

Yet various other facts suggest that FDIC-Conservator should not be distinguished from FDIC-Receiver for the purposes of a separate removal period under § 1819(b)(2)(B).  First, and most critically, courts have consistently discussed the FDIC as having a *dual* role – FDIC Corporate and FDIC Receiver – and not various capacities.  See Bullion, 50 F.3d at 708-09; FDIC v. Nichols, 885 F.2d 633, 636 (9th Cir. 1989) (listing cases); Mill Creek Group, Inc. v. FDIC, 136 F. Supp. 2d 36, 48 (D. Conn. 2001).  In Bullion, for instance, the Court noted that Congress "created *two* distinct entities with *two* entirely different purposes" in order to promote stability in the banking system – the receiver, which acts as a receiver for an individual bank, and the corporation, which runs the insurance fund.  50 F.3d at 708 (emphasis added).  Bullion further describes the legal separation between the two.  Id. at 709.  The dual role is reflected in the fact that *both* the FDIC Corporate and the FDIC Receiver can appear as separate legal entities protecting "wholly different interests" in one action. As the Court reads the statutory framework, the FDIC-Conservator would seem to fit comfortably into the receiver side of this dual role. Although, as mentioned above, provisions provide some additional powers to a receiver, many of the individual provisions appear to treat the conservator and receiver roles together, and distinguish the two from the FDIC's corporate role.  See, e.g., 12 U.S.C. § 1821(c)(5); id. § 1821(d)(1) (FDIC acting as conservator or receiver for depository institution "shall be entitled to offer the

9

assets of such depository institutions for sale to the Corporation or as security for loans from the Corporation"). Appointment of a conservator or receiver is justified by consideration of similar factors. Id. § 1821(c)(5). Moreover, when the FDIC appoints a conservator or a receiver, that conservator or receiver steps into the shoes of the insured institution, while FDIC corporate will have a distinct relationship with the depository institution in any litigation.

Considering the Bullion decision in light of the distinctions in this case, the Court declines to extend the Bullion reasoning to hold that the conservator and receiver capacities each provide a separate time period for removal. As discussed above, the Court recognizes that the capacities of conservator and receiver involve some differences. That said, the Court is not persuaded that those distinctions are sufficiently similar to those discussed by the court in Bullion for that case's conclusion to apply here. In particular, the Bullion court relied in significant part on the *two* distinct entities created by Congress and the very different roles that they had: one to administer insurance, one to administer failed banks. 50 F.3d at 708-09. Framed in that light, the Court considers the conservator and receiver roles to be largely akin in that both concern the administration of failed banks as distinct from the administration of the insurance fund. Contrary to FDIC's assertion, the Court does not read Bullion to say that each time the FDIC merely acts in a different capacity it has a new chance to remove. The Court reads Bullion to hold that each of the distinct legal entities – which will have different roles and represent different interests in a lawsuit – should have a separate

opportunity to remove.  Because the Court finds that the FDIC had its opportunity to remove when it was in a similar capacity as conservator, the Court finds the removal to have been untimely and grants Azadzoy's Motion to Remand.

**B.   Attorneys' Fees**

Plaintiff also moves for attorneys' fees under 28 U.S.C. § 1447(c).  Attorneys' fees should be granted only in unusual circumstances or where the removing party lacked an objectively reasonable basis for seeking removal. <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 141 (2005).

This is not a situation warranting attorneys' fees.  The jurisprudence on the importance of the various FDIC statuses on removal timing is limited, and Ninth Circuit authority can be read to support FDIC's position.  Thus, the Court does not consider the removal to have been baseless as a legal matter.

**III. CONCLUSION**

For the foregoing reasons, the Court grants the Motion to Remand and denies the Motion for Attorneys' Fees.

IT IS SO ORDERED.

Dated: July 13, 2009

DEAN D. PREGERSON
United States District Judge

11